IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18−cv–1119−SMY |
| | ) |
| CHESTER MENTAL HEALTH CENTER, | ) |
| DEPARTMENT OF HUMAN SERVICES, | ) |
| JOSEPH HARPER, | ) |
| CHESTER DIETARY STAFF, and | ) |
| NANCY VANESSA HENDERSON | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Christopher Davis, an inmate at Vienna Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that allegedly occurred at Chester Mental Health Center ("Chester"). Plaintiff requests equitable relief and damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which
> relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune
> from such relief.

However, a review of the Complaint shows that Plaintiff has attempted to bring improperly joined claims in this action. Accordingly, prior to conducting a § 1915A review, the Court finds it appropriate to sever some of Plaintiff's claims into a separate action. Plaintiff will be assessed an additional filing fee.

## **The Complaint**

Plaintiff alleges the following in the Complaint: Plaintiff is a practicing Muslim and has an allergy to carrots, bananas, and milk, which he reported to the staff at Chester. (Doc. 1, p. 17). In 2016, Plaintiff told the staff that he wished to participate in Ramadan, a month-long Islamic fast. (Doc. 1, pp. 17-18). Staff permitted Plaintiff to participate, but Plaintiff claims he was not provided with adequate calories and nutritious meals or permitted to perform the salats (prayer). (Doc. 1, p. 19). He was initially served breakfast trays with milk, one of his allergies. *Id*. When he complained, his breakfast meal was changed to oatmeal and/or grits that were served cold because the breakfast tray was being prepared the night before. *Id*. Plaintiff was denied adequate food at breakfast because he refused to eat hot food cold, and staff, including Harper, refused to accommodate him by microwaving the food or substituting cold food that didn't trigger Plaintiff's allergies. (Doc. 1, pp. 20-21).

Plaintiff's dinner trays were also frequently served cold and often contained carrots, to which he was allergic. (Doc. 1, p. 21). When Plaintiff reported the carrots, he would not get a replacement because the dietary staff had left for the day. (Doc. 1, p. 22). Plaintiff refused to eat any food served cold except chicken salad and tuna salad. *Id*. When he complained, he was advised that it was his option to participate in Ramadan. *Id*.

The end of Ramadan is marked by a feast called the Eid Celebration. (Doc. 1, p. 23). Plaintiff wanted to participate in the feast, but the feast tray contained carrots, despite Plaintiff's

2

well-documented allergy. *Id*. Plaintiff was told he could go to lunch later, but he was not allowed to attend lunch or given a replacement tray. *Id*. He was also prohibited from celebrating the end of Ramadan together with other Islamic inmates. (Doc. 1, p. 24). Staff retaliated against him by calling him an ISIS member, interrupting his prayers, and threatening to write him up for being disruptive while he was praying, when he complained about his treatment to Islamic activist groups. (Doc. 1, pp. 24-25).

Harper refused to take steps to make sure Plaintiff received adequate care and treatment while at Chester. (Doc. 1, p. 25). The dietary staff refused to provide Plaintiff with adequate nutrition during Ramadan, and that Harper refused to intervene. *Id*.

Henderson caused a box of his commissary food to be confiscated after she replaced the prior Unit Director. (Doc. 1-1, pp. 2-7). In a meeting responding to this incident, Henderson took steps to limit Plaintiff's ability to shop at commissary and to receive packages from his family. (Doc. 1-1, pp. 7-8). Plaintiff's commissary food was never returned to him, nor was he compensated for it. (Doc. 1-1, p. 8).

Plaintiff did not receive a package containing expensive clothes sent to him from his friends. (Doc. 1-1, p. 9). He complained to Henderson, but no action was taken. *Id*. Henderson had previously threatened to use the mail to punish Plaintiff. *Id*. Plaintiff was never reimbursed for the package, even after providing proof of its receipt at Chester. (Doc. 1-1, p. 10). Both Henderson and Harper refused to act. *Id*.

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 5 counts. The parties and the Court will use these designations in all future

pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claim shall proceed in this action:

> **Count 1** – Harper and Chester Dietary staff violated Plaintiff's First Amendment rights when they substantially burdened his practice of religion when they ignored his documented allergies in preparing food for Ramadan and associated feasts;

Plaintiff has also attempted to bring other Counts, but for the reasons elucidated below, these claims must proceed separately in a new case:

> **Count 2 –** Henderson and Harper violated Plaintiff's due process rights when they either caused and/or refused to adequately investigate the loss of 1 box of commissary food in violation of the Fourteenth Amendment;
>
> **Count 3 –** Henderson and Harper violated Plaintiff's First Amendment right when they substantially burdened his practice of religion by confiscating and/or refusing to adequately investigate to loss of 1 box of commissary food;
>
> **Count 4** – Henderson and Harper violated Plaintiff's First Amendment right to send and receive mail when they interfered with his receipt of a single package;
>
> **Count 5** – Henderson and Harper retaliated against Plaintiff by interfering with his receipt of a single package;

Before the Court addresses severance, it must first dismiss two defendants who are immune from suit. Plaintiff has named Chester Mental Health Center and the Department of Human Services as defendants. Plaintiff cannot maintain his lawsuit against the Illinois Department of Human Services because it is a state governmental agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment);

4

*Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same).

Likewise, Chester Mental Health Center, which is a division of the Illinois Department of Human Services, is not a "person" within the meaning of the Civil Rights Act and is not subject to a § 1983 action. *See Will*, 491 U.S. at 71. For these reasons, Defendants Chester Mental Health Center and Illinois Department of Human Services will be dismissed from this action with prejudice.

As to the issue of severance, in *George v. Smith*, the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits, "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b)(g)); *Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (failing to sever mis-joined claims prejudices the United States Treasury); *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). A prisoner who files a Complaint that includes multiple unrelated claims against different individuals should not be allowed to avoid "risking multiple strikes for what should have been several different lawsuits." *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010).

The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21 or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). Relatedly, Federal Rule of Civil Procedure 20 permits the joinder of all claims that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; [when] any question of law of fact common to all defendants will arise in the action." As such, a plaintiff cannot join

5

separate claims against different defendants or sets of defendants in the same lawsuit unless the plaintiff asserts a claim for relief against each defendant that arises out of the same transaction or occurrence or series thereof, and presents common questions of law or fact. *Owens*, 860 F.3d at 436; *George*, 507 F.3d at 607.

Unrelated claims may be joined under Federal Rule of Civil Procedure 18 if Rule 20 has already been satisfied. *Intercon Research Associates, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982). Therefore, in order to determine whether claims are properly joined, the Court court must conduct a two-step analysis: the Court must first determine whether defendants are properly joined under Rule 20; the Court may then consider any unrelated claims against one or more of the group of defendants properly joined.

Here, Plaintiff has clearly articulated a claim based on staff conduct during Ramadan in 2016. But his remaining claims did not arise from the same transaction or occurrence for Rule 20 purposes. Although Plaintiff has been vague about when he lost commissary items and the package at issue, there are indications that these things occurred much later than the Ramadan incident. In particular, Plaintiff's Statement of Claim does not actually discuss the lost property. Rather, those allegations are contained in a "Notice" attached to the Complaint as an exhibit. The Complaint has a signature date of August 9, 2017 – 9 months before this case was submitted to the Court for filing. Thus, it appears that Plaintiff drafted his Statement of Claim and the exhibit detailing the additional claims at different times.

With respect to his claims regarding Ramadan, Plaintiff states that non-defendant Lila Lee was the Unit Director during that time period (Doc. 1, p. 18). At the same time, Paintiff alleges that his claims regarding lost property arose after Lee retired and Henderson replaced her.

(Doc. 1-1, p. 2). It is clear, therefore, that these claims arose during different time periods; suggesting they are not transactionally related.

Moreover, Plaintiff's "Notice" does not mention religion, Islam, or Ramadan at all. Plaintiff has attempted to correct this by filing two motions alleging that all of his claims are related and asking the Court to allow them to proceed together. (Docs. 4 and 5). At one point, Plaintiff alleges the confiscation of his commissary items was intended to keep him from practicing his religion. (Doc. 5, p. 1). However, this allegation is not in the "Notice" that is part of the Complaint, and this court's local rules prohibit piecemeal amendments and allegations. See, SDLR 15. 1 (requiring litigants to submit complete complaints with old and new material together). To the extent the motions at Docs. 4 and 5 seek to add additional allegations, those requests are denied. Plaintiff must stand on the facts alleged in the Complaint.

Additionally, the allegation is conclusory and does not provide any facts making it plausible that the confiscation of commissary items was meant to burden his religious practice. Plaintiff does not allege that he needed any of the confiscated items to practice his religion. Absent a religious connection, Plaintiff's remaining claims are not transactionally related to Count 1. Even if they were, the separation in time and the different actors at issue are sufficient to render the claims distinct. Accordingly, severance of Counts 2-5 is appropriate.

Rule 18 does permit the joinder of all claims against a single defendant in the same action, which may permit the joinder of all claims against Harper. However, the Court will exercise its discretion pursuant to Fed. R. Civ. P. 21 to sever the claims against Harper into the new action with Henderson. There are no grounds to join the claims against Henderson to the claims proceeding in this action. Count 1 raises distinct legal and factual issues from Counts 2-5, and the Court finds that judicial economy will be served by grouping the cases based on the facts

at issue in each.  Therefore, to avoid having potentially two different judges issue decisions regarding Plaintiff's property claims, all of Plaintiff's property claims will proceed together in a single action.

In summary, Count 1 shall remain in this action and a separate order will be issued to review the merits of that claim.  Plaintiff will be provided with a copy of the merits review order as soon as it is entered.  No service shall be ordered on any defendant at this time, pending the § 1915A review.

## Disposition

**IT IS HEREBY ORDERED** that Counts 2 through 5, which are unrelated to Count 1, are severed into a separate case.  Defendants Chester Mental Health Center and the Department of Human Services are **DISMISSED with** prejudice.  Plaintiff's Motions seeking to avoid severance are **DENIED**.  (Doc. 4)(Doc. 5).  Count 1 against Harper and Chester Dietary Staff shall stay in this case.  The severed case shall contain Counts 2 through 5 against Harper and Henderson  The Clerk of Court is directed to terminate Henderson from this action.

The claims in the severed cases shall be subject to merits review pursuant to 28 U.S.C. §1915A after a new case number and judge assignment is made.  In the new case in this Court, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order;
2) The Complaint (Doc. 1);
3) The Order at Doc. 15, granting IFP status;

As Plaintiff has been previously granted IFP status, he will be granted IFP status in the new case. **Plaintiff will be responsible for an additional $350.00 filing fee** in the newly severed case.  No service shall be ordered on the defendants in the severed case until the § 1915A review is completed.

**IT IS SO ORDERED.**

**DATED: August 27, 2018**

                                                    s/ STACI M. YANDLE
                                                    **U.S. District Judge**